# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| TAMMI L. LANNING, <br><br> Plaintiff, <br><br> vs. <br><br> KILOLO KIJAKAZI, <br> Acting Commissioner of Social Security, <br><br> Defendant. | No. 20-CV-3046-LTS-KEM <br><br><br> **REPORT AND RECOMMENDATION** |

_____

This Social Security case involves a different procedural posture than most. After a hearing, the administrative law judge (ALJ) found Plaintiff Tammi L. Lanning disabled under the listings and granted her application for disability insurance (DI) benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. The Appeals Council granted review and reversed, finding that substantial evidence did not support the ALJ's step-one finding and that Lanning's part-time work during the period of disability constituted substantial gainful activity. Lanning argues the Appeals Council erred. Because the court's review is limited to whether substantial evidence supports the Appeals Council's decision, I recommend **affirming** the Commissioner's decision.

## *I.    BACKGROUND*

Lanning, in her 50s, worked full-time as a hospice nurse for decades. She began suffering mental-health problems (anxiety and depression) in late 2015 after her supervisor retired and was replaced with someone more critical of Lanning's performance (Lanning had previously received mental-health treatment in 1999 after a bout of

depression that left her unable to work for six months). *See* AR 302, 318, 341. She began therapy and received psychiatric medications from her primary care provider. *See* AR 314, 316, 318. Ultimately, in late March 2017, she was fired from her job (for "overall performance") after working there for eighteen years. AR 287, 302, 313.

Shortly thereafter, on April 28, 2017, she filed for disability. AR 5. She had told her primary care provider a few weeks earlier about her worsening depression and stated that she felt worthless after losing her job and that she did not think she could work as a result. AR 313. In early May 2017, she visited a psychiatrist to establish care for psychiatric medication management, and she asked the psychiatrist to fill out a form evaluating her mental limitations to support her disability claim (the psychiatrist refused given that it was her first appointment and that her mental symptoms would likely improve with treatment). AR 303-04.

On May 17, 2017, the Social Security Administration denied Lanning's disability application. AR 298-300. Since 2012, Lanning has worked as an in-home respite care provider for her great niece with cerebral palsy, continuing this work even after she lost her job as a hospice nurse. AR 30, 303. Because her gross earnings for the respite-care job totaled $780 every two weeks, the Social Security Administration found Lanning was engaging in substantial gainful activity and denied her application at step one. *See* AR 152, 298-300.

Lanning re-filed for DI benefits on July 10, 2017 (the application at issue), alleging disability since June 1, 2017. AR 59, 85. She submitted pay stubs showing a reduction in earnings immediately after the prior denial, grossing $520 for the two-week period from May 16 to May 31 and from June 1 to June 15, 2017. AR 153-54. The Social Security Administration proceeded past step one but denied her application on initial review (finding her mental impairments were not severe) and on reconsideration (finding that despite her severe mental limitations, she was not so limited that she could not work). AR 59-79.

2

Lanning requested review by an ALJ, who held a hearing on June 12, 2019. AR 17. A few weeks later, the ALJ issued a (very short) written opinion granting Lanning disability benefits. AR 85-87. The ALJ found that Lanning had not engaged in substantial gainful activity since the alleged onset date, noting that although she cared for her great niece, her work "remain[ed] below the level of wages considered to be substantial gainful activity since she reduced her hours as of the alleged onset date." AR 85. The ALJ cited an exhibit showing that although Lanning earned $4,901 for her respite-care work in the second quarter of 2017 ($1,633 monthly), she earned $3,120 quarterly thereafter (from the third quarter of 2017 through the first quarter of 2019) ($1,040 monthly). AR 85, 172-73. At step three, the ALJ found Lanning suffered marked limitations in interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. AR 86. Thus, the ALJ found Lanning disabled under the listings. *Id*.

The Appeals Council granted sua sponte review in August 2019, notifying Lanning that it intended to reverse the ALJ's award of benefits and giving Lanning a chance to respond. AR 135-41. The Appeals Council issued its final decision on July 28, 2020. AR 1-10. The Appeals Council found that substantial evidence did not support the ALJ's determination that Lanning had not engaged in substantial gainful activity since the disability onset date. AR 4. The Appeals Council also stated "even if the claimant could show that she did not perform substantial gainful activity during the relevant period, further review would have been necessary because substantial evidence does not support the finding that the claimant's impairments have met the requirements of Listing 12.06." AR 6-7. After discussing the mental-health records, the Appeals Council indicated "further evaluation of [the listing] issue is not necessary at this time because the claimant has not established that her work throughout the period at issue was not substantial gainful activity." AR 9. The Appeals Council did not evaluate Lanning's RFC or determine whether she could perform her past or other work—i.e., the Appeals Council did not

3

proceed past step three of the analysis. In its conclusion, the Appeals Council summarized its findings, which related only to the step-one issue. AR 10.

Lanning filed a timely complaint in this court seeking judicial review of the Appeals Council's decision (Doc. 1).[1] The parties briefed the issues (Docs. 25, 28-30) and the Honorable Leonard T. Strand, Chief United States District Judge of the Northern District of Iowa, referred this case to me for a report and recommendation.

## II. STANDARD OF REVIEW

In the typical Social Security case before the court, the ALJ issued a decision denying benefits and the Appeals Council declined review. In such cases, the court reviews the ALJ's decision under the deferential "substantial evidence" standard.[2] The Eighth Circuit has described this standard as follows:

> "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." The court "does not reweigh the evidence or review the factual record de novo." If, after reviewing the evidence, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the decision."[3]

Here, the parties dispute whether the substantial evidence standard applies to the Appeals Council's decision or the ALJ's decision. That is, the Commissioner argues that the court must affirm if the Appeals Council's decision is supported by substantial evidence (regardless of whether the ALJ's decision was supported by substantial evidence), while Lanning argues that the court must reverse if the ALJ's decision was

---

[1] *See* **20 C.F.R. §§ 404.981, 422.210(c)**.

[2] *See, e.g.*, ***Dudrey v. Kijakazi***, No. 20-CV-0079-KEM, 2022 WL 965396, at *3 (N.D. Iowa March 30, 2022).

[3] *Id.* at *3 (quoting ***Kirby v. Astrue***, 500 F.3d 705, 707 (8th Cir. 2007); ***Naber v. Shalala***, 22 F.3d 186, 188 (8th Cir. 1994); ***Robinson v. Sullivan***, 956 F.2d 836, 838 (8th Cir. 1992)).

4

supported by substantial evidence (regardless of whether the Appeals Council's decision is supported by substantial evidence). Basically, the parties dispute which opinion is owed deference, the Appeals Council's or the ALJ's.

The regulations set forth several instances in which the Appeals Council "will" sua sponte review a case: an apparent abuse of discretion; an error of law; a broad policy or procedural issue affecting the public; new evidence; or, as the Appeals Council stated here, a lack of substantial evidence supporting the ALJ's findings or conclusions.[4] Once the Appeals Council grants review, it "may affirm, modify[,] or reverse the" ALJ's decision, and if it "issues its own decision, it will base its decision on the preponderance of the evidence."[5] "The Appeals Council's decision, rather than the ALJ's decision, constitutes the final decision of the Secretary and is the only decision subject to review by th[e] court."[6] By statute, the court reviews "[t]he findings of the Commissioner of Social Security as to any fact" under the substantial-evidence standard.[7]

Here, because the Appeals Council's decision is the final decision of the Commissioner, it is the decision owed deference. And courts generally do not consider arguments that the Appeals Council erred in deciding whether to grant review.[8] Every circuit court to address the issue (including the Eighth Circuit) has held that a claimant

---

[4] **20 C.F.R. § 404.970(a)**; *see also* **Hearings, Appeals, & Litigation Law Manual (HALLEX) § I-3-6-1**, available at https://www.ssa.gov/OP_Home/hallex/I-03/I-3-6-1.html (last updated April 1, 2016).

[5] **20 C.F.R. § 404.979**.

[6] *Grace v. Sullivan*, 901 F.2d 660, 662 (8th Cir. 1990); *see also* **20 C.F.R. §§ 404.981, 422.210(a)**.

[7] **42 U.S.C. § 405(g)**.

[8] *See Cunningham v. Apfel*, 222 F.3d 496, 500 (8th Cir. 2000) (court does not "evaluate the Appeals Council's decision to deny review" based on new evidence).

5

may not challenge in court the Appeals Council's finding that an ALJ's decision was not supported by substantial evidence.[9]

Thus, I will not consider Lanning's primary argument that the Appeals Council erred in finding the ALJ's decision unsupported by substantial evidence. Instead, I address whether the Appeals Council's decision is supported by substantial evidence.

### III. WHETHER SUBSTANTIAL EVIDENCE SUPPORTS THE APPEALS COUNCIL'S DECISION

At step one, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the alleged onset date. In determining whether a claimant's work constitutes substantial gainful activity, the "primary consideration" is the claimant's earnings—$1,170 monthly in 2017, $1,180 monthly in 2018, and $1,220

---

[9] ***Welch v. Heckler***, 808 F.2d 264, 268 (3d Cir. 1986) (collecting cases and holding that "because the regulations clearly designate the Appeals Council as the final administrative arbiter of all disability claims, it is the Council's decision that is the 'final decision' of the Secretary, and is thus the decision that must be reviewed . . . under the substantial evidence standard"); ***Fierro v. Bowen***, 798 F.2d 1351, 1354 (10th Cir. 1986) (holding that the court determines whether the Secretary's final decision (the Appeals Council's decision) is supported by substantial evidence and rejecting argument that the court must "first examine the ALJ's decision and determine whether it is supported by substantial evidence"); ***Mullen v. Bowen***, 800 F.2d 535, 529 n.3, 545 (6th Cir. 1986) (en banc) (holding that when Appeals Council reversed ALJ decision awarding benefits, "review by the district courts[] is to be governed by the substantial evidence standard in terms of the Secretary's final decision as expressed by the final action of the Appeals Council"); ***Parker v. Bowen***, 788 F.2d 1512, 1519-20 (11th Cir. 1986) (en banc) ("[I]n cases where the Appeals Council reverses an ALJ's decision on its own motion, judicial review is limited to determining whether the Appeals Council's decision is supported by substantial evidence."); ***Berrios v. Sec'y of Health & Hum. Servs.***, 796 F.2d 574, 575 (1st Cir. 1986) (rejecting claimant's argument "that since the ALJ's findings were supported by substantial evidence, the Appeals Council was without jurisdiction to undertake a plenary review"); ***Baker v. Heckler***, 730 F.2d 1147, 1149-50 (8th Cir. 1984) (holding that even if plaintiff was correct and ALJ's decision was supported by substantial evidence, "it is the [Appeals] Council's decision that must be deferred to by the courts if substantial evidence exists to support it").

6

monthly in 2019.[10]  Here, Lanning's earnings were just under those limits, averaging $1,040 monthly.  *See* AR 164, 172.

As the Appeals Council noted, however, the Social Security Administration will "consider other information in addition to [a claimant's] earnings if there is evidence indicating that [the claimant] may be engaging in substantial gainful activity or that [the claimant is] in a position to control when earnings are paid to [the claimant] or the amount of wages paid to [the claimant] (for example, if [a claimant is] working for a small corporation owned by a relative)."[11]  The regulations further provide that the Social Security Administration will find a claimant is engaging in substantial gainful activity when "[the claimant's] work, although significantly less than that done by unimpaired people, is clearly worth the [substantial gainful activity] amounts . . . , according to pay scales in [the claimant's] community."[12]

Here, Lanning testified that she does respite care for her great niece "from Friday to Sunday" through a waiver program with the state.  AR 30.  The ALJ asked, "from Friday until Sunday, how many hours does that total?" and Lanning responded:

> Well I give . . . , it's actually 48 hours[] cause I'm . . . there sometimes longer but I get paid for the 40 hours.  But I may[ ]be there 50, I mean . . . I'm over that.  I mean if I go up on a Friday and come back on a Sunday or Monday but, my great niece is 15 miles from me.  And, so I'm usually over the 40 hours, but that's what I get paid is the 40 hours.

*Id*.  Lanning stated she is paid $13 an hour and grosses $520 every two weeks (meaning she is paid for 40 hours of work every two weeks).  *Id*.  When the ALJ noted Lanning had previously earned more doing the respite-care work, Lanning explained:

> [W]hen I went and saw . . . the psychiatrist in June of 2017, I just felt like my depression was getting more severe and I really couldn't just keep doing it.  The more hours that they had me down for so yes, I did reduce it.  It

---

[10] **20 C.F.R. § 404.1574(a)(1)**; *see also* Docs. 28, 29.

[11] **20 C.F.R. § 404.1574(b)(3)(ii)**.

[12] **20 C.F.R. § 404.1574(b)(3)(ii)(B)**.

7

> was just . . . too much for me to keep doing. . . . I use[d] to work, it would have been the 80 hours, every two weeks. And then, I cut back to the 40 hours and then just started helping on the weekends. . . . And then the children go to school during the week and then they have another respite provider during the week.

AR 33.

Based on Lanning's initial testimony, the Appeals Council could find that Lanning's respite-care work constituted substantial gainful activity. Although she was paid for 40 hours of work every two weeks ($1,040 monthly), she testified that she actually works 48 or 50 hours every two weeks—which at $13 an hour, would bump her work over the substantial gainful activity threshold (48 hours x $13/hour x 2 = $1,248 monthly). Further supporting the Appeals Council's conclusion, the Appeals Council noted that after losing her hospice-nurse job, Lanning's earnings continued to amount to substantial gainful activity. But Lanning immediately reduced her earnings to just below the substantial gainful activity threshold in mid-May 2017 after her first disability application was denied based on her earnings. And Lanning worked for her niece, someone she could tell to pay her for less time so that she qualified for disability, even as she performed more work.

Lanning argues that her respite-care work was performed under special conditions and therefore does not constitute substantial gainful activity. The regulations provide:

> The work you are doing may be done under special conditions that take into account your impairment, such as work done in a sheltered workshop or as a patient in a hospital. If your work is done under special conditions, we may find that it does not show that you have the ability to do substantial gainful activity. . . . However, work done under special conditions may show that you have the necessary skills and ability to work at the substantial gainful activity level. Examples of the special conditions that may relate to your impairment include, but are not limited to, situations in which—
>> (1) You required and received special assistance from other employees in performing your work;

(2) You were allowed to work irregular hours or take frequent rest periods;
(3) You were provided with special equipment or were assigned work especially suited to your impairment;
(4) You were able to work only because of specially arranged circumstances, for example, other persons helped you prepare for or get to and from your work;
(5) You were permitted to work at a lower standard of productivity or efficiency than other employees; or
(6) You were given the opportunity to work despite your impairment because of family relationship, past association with your employer, or your employer's concern for your welfare.[13]

Lanning testified that her home health aide work involves caring for her great niece with cerebral palsy who cannot walk or talk and who weighs around thirty pounds. AR 29. Lanning testified that from Friday to Sunday, she feeds her great niece and provides her liquids, changes her diaper, holds her because "she cries quite a bit" and "likes to be held," watches cartoons with her, changes her clothes, and puts her to bed. AR 31. Lanning said that she sleeps next to her great niece. *Id.* She also said that her great niece is not able to engage in play activities that she would do otherwise. *Id.*

Lanning argues that this work was performed under special conditions, since Lanning worked for her niece and was paid to sleep besides her great niece. But the evidence does not support that she was paid to sleep—Lanning testified that she remained at her niece's house all weekend, but only received payment for 20 hours of work, and actually worked 24-25 hours (i.e., somewhere between eight and twelve hours of work a day). And simply because Lanning worked for a relative does not mean the work was performed under special conditions.[14]

---

[13] **20 C.F.R. § 404.1573(c)**.

[14] *See* **Logan-Wilson v. Berryhill**, No. 4:16-cv-01327-JAR, 2017 WL 4381589, at *9-10 (E.D. Mo. Sept. 28, 2017) (upholding ALJ's finding that claimant who worked as home health aide for mother engaged in substantial gainful activity).

The Dictionary of Occupational Titles (DOT) describes working as a home health aide as follows:

> Cares for elderly, convalescent, or handicapped persons in patient's home, performing any combination of following tasks: Changes bed linens, washes and irons patient's laundry, and cleans patient's quarters. Purchases, prepares, and serves food for patient and other members of family, following special prescribed diets. Assists patients into and out of bed, automobile, or wheelchair, to lavatory, and up and down stairs. Assists patient to dress, bathe, and groom self. Massages patient and applies preparations and treatments, such as liniment or alcohol rubs and heat-lamp stimulation. Administers prescribed oral medications under written direction of physician or as directed by home care nurse. Accompanies ambulatory patients outside home, serving as guide, companion, and aide. Entertains patient, reads aloud, and plays cards or other games with patient. Performs variety of miscellaneous duties as requested, such as obtaining household supplies and running errands. May maintain records of services performed and of apparent condition of patient. May visit several households to provide daily health care to patients.[15]

Here, Lanning's duties caring for her great niece are consistent with this description. In addition, Lanning has a nursing degree and is certified to perform this kind of work.[16] And there is no evidence or testimony that Lanning required special supervision or assistance, worked irregular hours, or otherwise performed the work in a different manner than most home health aides.

---

[15] **DOT § 354.377-014**.

[16] *Cf. Acosta v. Apfel*, 15 F. Supp. 2d 947, 950-51 (C.D. Cal. 1998) (holding substantial evidence did not support that claimant's work as a home health aide caring for her own son constituted substantial gainful activity when claimant "was not licensed to provide home health care and had no training or past experience in the field, suggesting that the services of a professional home health aide were not necessarily required or involved").

10

Accordingly, I recommend finding that substantial evidence supports the Appeals Council's decision that Lanning's work as a home health aide constituted substantial gainful activity.

## IV. CONCLUSION

I recommend **affirming** the Commissioner's decision and entering judgment in favor of the Commissioner.

Objections to this Report and Recommendation must be filed within fourteen days of service in accordance with 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections.[17] Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation, as well as the right to appeal from the findings of fact contained therein.[18]

**DATED** June 13, 2022.

Kelly K.E. Mahoney
Chief United States Magistrate Judge
Northern District of Iowa

---

[17] **Fed. R. Civ. P. 72**.

[18] *See United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).